UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| Josh Buechler,<br><br>          Plaintiff,<br><br>v.<br><br>Canadian National Railway Co., and<br>Illinois Central Railroad,<br><br>          Defendants. | Case No.     17-CV-3035-MWB<br><br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

**PRELIMINARY STATEMENT**

1. Complainant Josh Buechler ("Buechler") has been a longtime and loyal employee of Defendants Canadian National Railway Co. ("CNR") and Illinois Central Railroad ("ICR") collectively referred to herein as "CN". Because Buechler suffers from chronic shoulder instability, CN has held him out of work in violation of the Americans with Disabilities Act, 42 U.S.C § 12101, *et seq.*, as amended ("ADA"), the Iowa Civil Rights Act of 1965, Iowa Code § 216.1, *et seq.* ("ICRA"), and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

**JURISDICTION**

2. This Court has jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 29 U.S.C. § 1331, as Buechler alleges violations of the ADA and the FMLA.

3. This Court has supplemental jurisdiction to adjudicate Buechler's state law claims, which arise under the ICRA, pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

5. Buechler is a resident of Fort Dodge, Iowa. At all relevant times, Buechler served as a conductor for CN.

6. CNR is a railroad carrier engaged in interstate and foreign commerce. It is headquartered in Montreal, Canada.

7. ICR is a wholly-owned subsidiary of CNR.

## INTEGRATED ENTERPRISE

8. CNR's and ICR's operations are interrelated. For example, CNR has headquartered all of its American subsidiaries, including ICR, at 17641 S. Ashland Ave., Homewood, IL 60430. Additionally, CNR is responsible for the accounts receivables and payroll for its American subsidiaries, including ICR. CNR also shares equipment with its American subsidiaries.

9. CNR and ICR share common management. CNR ensures that its American subsidiaries are managed by the same people, who are hired and managed by CNR.

10. CNR controls labor relations and personnel for ICR. CNR dictates the terms of employment (*e.g.*, salaries and workplace rules) for its American subsidiaries, including ICR. CNR is also responsible for hiring and firing employees at its American subsidiaries, including ICR.

11. There is common ownership and financial control between CNR and ICR.

## JOINT EMPLOYERS

12. CNR and ICR co-determine matters governing the essential terms and conditions for employment. CNR ensures that its American subsidiaries are managed by the same people, who are hired and managed by CNR. Additionally, CNR dictates the terms of employment (*e.g.*, salaries and workplace rules) for its American subsidiaries, including ICR. CNR is also responsible for hiring and firing employees for its American subsidiaries, including ICR.

## **FACTUAL ALLEGATIONS**

13. Buechler began working for CN in 2007 as a conductor.

14. Buechler suffers from chronic shoulder instability, which can cause subluxations and partial dislocations.

15. Because manual labor exacerbates Buechler's chronic shoulder instability, he needs four to five days off of work for his shoulder to heal.

16. From 2007 to 2010, CN accommodated Buechler by allowing him to take sick days as needed. Providing this accommodation was reasonable and not overly burdensome for CN.

17. From 2010 to 2015, CN accommodated Buechler by allowing him to take intermittent FMLA leave as needed. Providing this accommodation was reasonable and not overly burdensome for CN.

18. In early 2015, CN began requiring Buechler to get approval from its doctors before allowing him to return to work.

19. While CN's doctors would ultimately approve Buechler to return to work, they would not see him until weeks or months after he asked to return. Buechler was forced to sit idle while he waited for word from CN's doctors.

3

20. CN's failure to promptly return Buechler to work caused him to suffer wage loss and compensatory damages.

21. CN's failure to promptly return Buechler to work also negatively impacted his eligibility for FMLA leave.

22. Because Buechler no longer qualified for FMLA leave, he had to take medical leave, a right provided by his collective bargaining agreement, when his chronic shoulder instability flared.

23. In January 2016, when Buechler tried to return from medical leave, CN had a doctor who never examined Buechler review his record. CN's doctor ultimately disqualified him from service.

24. CN's refusal to return Buechler to work has caused him to suffer wage loss and compensatory damages.

25. Buechler filed Charges of Discrimination against Defendants on August 9, 2016 and he filed amended charges on or around February 16, 2017, with the Equal Employment Opportunity Commission (EEOC), alleging FMLA violations and discrimination on the basis of disability is in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

26. The EEOC issued Buechler a Notice of Right to Sue on March 1, 2017, giving him 90 days to bring his complaint in federal court. Plaintiff now brings this complaint.

## **CAUSES OF ACTION**

### **COUNT I**
### **DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA**

27. Buechler incorporates the foregoing paragraphs into his Complaint by reference.

28. Buechler is disabled within the meaning of the ADA. 42 U.S.C. § 12102(1).

29. Buechler is a qualified individual within the meaning of the ADA. 42 U.S.C. §

4

12111(8).

30. During all relevant times, Buechler and CN were "employee" and "employer" pursuant to the ADA. 42 U.S.C. § 12111(4), (5).

31. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

32. Section 12112(b)(5)(A) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."

33. CN discriminated against Buechler on the basis of disability when it failed to promptly return him to service and when it permanently removed him from service.

34. As a result of CN's unlawful conduct, Buechler has suffered loss of income, loss of benefits, mental anguish, emotional distress, and other damages in an amount in excess of $75,000.

35. Buechler is entitled to attorneys' fees and costs incurred in connection with this claim.

36. CN acted with malice and/or reckless disregard for the rights and safety of Buechler. As such, he is entitled to punitive damages.

## COUNT II
## VIOLATIONS OF THE ICRA

37. Buechler incorporates the foregoing paragraphs into his Complaint by reference.

38. Buechler is disabled within the meaning of the ICRA, Iowa Code § 216.2(5).

5

39. During all relevant times, Buechler and CN were "employee" and "employer" pursuant to the ICRA. Iowa Code § 216.2(6), (7).

40. Section 216.6(1)(a) of the ICRA prohibits employers from discriminating "in employment against any . . . employee because of the . . . disability of such . . . employee, unless based on the nature of the occupation.". In addition, the provision states that, "[i]f a person with a disability is qualified to perform ta particular occupation . . . the nature of that occupation shall not be the basis for the exception to the unfair or discriminating practices prohibited by [the ICRA]."

41. CN discriminated against Buechler on the basis of disability when it failed to promptly return him to service and when it permanently removed him from service.

42. As a result of CN's unlawful conduct, Buechler has suffered loss of income, loss of benefits, mental anguish, emotional distress, and other damages in an amount in excess of $75,000.

43. Buechler is entitled to attorneys' fees and costs incurred in connection with this claim.

**COUNT III**
**UNLAWFUL INTERFERENCE IN VIOLATION OF THE FMLA**

44. Buechler incorporates the foregoing paragraphs into his Complaint by reference.

45. For purposes of the FMLA, separate entities' constitute an "integrated employer" when the entities' relationship, considered in its totality, demonstrates factors such as common management, interrelation between operations, centralized control of labor relations, and degree of common ownership/control.

46. At all times relevant to this action, CN constituted an integrated employer for purposes of the FMLA.

47. For purposes of the FMLA:

> Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA. Joint employers may be separate and distinct entities with separate owners, managers, and facilities. Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
>> (1) Where there is an arrangement between employers to share an employee's services or to interchange employees;
>> (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
>> (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 825.106.

48. At all times relevant to this action, CNR and ICR were joint employers for purposes of the FMLA.

49. Sections 2612(a)(1)(D) and (d)(2)(B) of the FMLA allow employees to take up to twelve weeks of leave because of serious health conditions that render the employees unable to perform the functions of their positions. Such leave may be taken intermittently or on a reduced leave schedule when medically necessary. 29 U.S.C. § 2612(b)(1).

50. Upon returning to work from FMLA leave, employees shall be "restored by the employer to the position of employment held by the employee when the leave commenced [or] to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. §§ 2614(a)(1)(A)-(B). Section 2615(a) of the FMLA also prohibits employers from otherwise "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]."

51.     Buechler was an eligible employee of CN, and CN knew Buechler had a serious health condition and was exercising his rights under the FMLA. Regardless, CN refused to allow Buechler to promptly return from FMLA leave, thereby ensuring Buechler would not qualify for FMLA leave going forward, and then removed him from service.

52.     CN's violations of 29 U.S.C. § 2615 were not in good faith, and CN did not have reasonable grounds for believing that its conduct did not violate 29 U.S.C. § 2615.

53.     As a result of CN's violations of 29 U.S.C. § 2615, Buechler has suffered past and present loss of income, lost benefits, lost interest, and other damages in an amount in excess of $75,000.

54.     Buechler is also entitled to attorneys' fees and costs incurred in connection with this claim.

## COUNT IV
## UNLAWFUL RETALIATION IN VIOLATION OF THE FMLA

55.     Buechler incorporates the foregoing paragraphs of his Complaint by reference.

56.     Under 29 U.S.C. § 2615, it is unlawful for an employer to discriminate or retaliate against individuals for exercising their rights under the FMLA or for opposing unlawful practices under the FMLA.

57.     CN's conduct described herein constitutes unlawful retaliation in violation of 29 U.S.C. § 2615.

58.     CN's violations of 29 U.S.C. § 2615 were not in good faith, and CN did not have reasonable grounds for believing that its conduct did not violate 29 U.S.C. § 2615.

59.     As a result CN's violations of 29 U.S.C. § 2615, Buechler has suffered past and present loss of income, lost benefits, lost interest, and other damages in an amount in excess of $75,000.

60. Buechler is also entitled to attorneys' fees and costs incurred in connection with this claim.

**PRAYER FOR RELIEF**

WHEREFORE, Buechler prays for judgment against CN as follows:

1. That the practices of CN complained of herein be determined and adjudged to constitute violations of the ADA, ICRA, and the FMLA;

2. An injunction against CN and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in excess of $75,000.00;

4. For an award of punitive damages as allowed by the ADA;

5. Pre-judgment interest, as provided by law;

6. For Buechler's costs, disbursements and attorneys' fees pursuant to law;

7. For all other relief available under the ADA, ICRA, and the FMLA;

8. For such other and further relief available by statute; and

9. For such other and further relief as the Court deems just and equitable.

Date: May 4, 2017

**GRAHAM, ERVANIAN & CACCIATORE, LLP**

/s/ Wesley T. Graham
Wesley T. Graham #AT0011184
317 Sixth Avenue, Suite 900
Des Moines, Iowa 50309
Telephone: (515) 244-9400
Fax: (515) 282-4235
wtg@grahamlawiowa.com

9

**NICHOLS KASTER, PLLP**

Matthew H. Morgan (MN #304657)*
morgan@nka.com
Nicholas D. Thompson (MN # 389609)*
nthompson@nka.com
4600 IDS Center, 80 South Eighth Street
Minneapolis, Minnesota 55402-2242
Telephone:  (612) 256-3200
Fax:  (612) 338-4878
*Pro hac vice* admission forthcoming


**ATTORNEYS FOR PLAINTIFF**